```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF INDIANA
                         SOUTH BEND DIVISION
```

KAREN DOSWELL,                  )
                                )
Plaintiff,                      )
                                )   CAUSE NO. 3:15-CV-441
        vs.                     )
                                )
TANGLEWOOD TRACE AND             )
MAXIM STAFFING                  )
SOLUTIONS,                      )
                                )
Defendants.

## OPINION AND ORDER

This matter is before the Court on the: (1) "Defendant, Maxim Healthcare Services, Inc. D/B/A Maxim Staffing Solutions' Motion to Dismiss," filed by Defendant, Maxim Healthcare Services, Inc. D/B/A Maxim Staffing Solutions, on February 23, 2016 (DE #33); and (2) "Defendant CW LLC D/B/A Tangelwood [sic.] Trace's Motion to Dismiss Plaintiff's Amended Complaint," filed by Defendant, CW LLC d/b/a Tanglewood Trace, on February 26, 2016 (DE #35). For the reasons set forth below, both motions to dismiss (DE #33, #35) are **GRANTED**. The Clerk is **ORDERED** to **DISMISS** all claims in the First Amended Complaint (DE #29) **WITH PREJUDICE**. Additionally, the Clerk is **ORDERED** to **CLOSE** this case.

BACKGROUND

On September 28, 2015, Plaintiff, Karen Doswell ("Doswell"),

filed a complaint against Defendants Tanglewood Trace, Maxim Staffing Solutions, and CW LLC doing business as Tanglewood Trace (DE #1). Defendant, Tanglewood Trace, filed a motion to dismiss on December 21, 2015 (DE #21), but then Doswell filed an amended complaint (DE #29). Consequently, Tanglewood's motion to dismiss was denied as moot (DE #32).

After the filing of the first amended complaint, the instant motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) were filed by Defendant, Maxim Healthcare Services, d/b/a Maxim Staffing Solutions ("Maxim") (DE #33), and Defendant, CW LLC d/b/a Tanglewood Trace ("Tanglewood Trace") (DE #35). Doswell filed a motion to amend the complaint again (DE #37), the Magistrate Judge denied the motion to amend (DE #42), and denied a motion for reconsideration (DE #46).

In response to the motions to dismiss, Doswell referred the Court to her earlier response to the initial motion to dismiss (DE ##41, 28). Tanglewood Trace also filed a reply to the initial motion to dismiss (DE #30). As such, these motions are fully briefed and ripe for adjudication.

DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations other than fraud

2

and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" that the pleader is entitled to relief. However, fraud and constructive fraud claims are subject to the heightened Rule 9(b) pleading standards. *Cincinnati Life Ins. Co. v. Grottenhuis*, No. 2:10-cv-00205-LJM-WGH, 2011 WL 1107114, at *8 (S.D. Ind. Mar. 23, 2011) (it is "undisputed that the constructive and actual fraud claims are subject to heightened Rule 9(b) pleading standards.").

In order to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts must be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). However, plaintiffs may plead themselves out of court if the complaint includes allegations that show they cannot possibly be entitled to the relief sought. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Facts

On January 28, 2014, Doswell was employed by Maxim, a medical personnel temporary staffing agency. (Am. Compl. ¶ 8.) She was a

3

nursing assistant. Doswell alleges that during orientation in November 2013, Maxim showed her a video which promised to defend her license if an incident occurred which impacted her license. (*Id.* ¶ 9.)

On January 28, 2014, Doswell was sent by Maxim to Tanglewood to provide resident care for the second shift from 2:00 p.m.-10:00 p.m. (*Id.* ¶ 10.) Doswell claims she had been assigned by Maxim to Tanglewood on approximately a dozen occasions, and she was typically assigned to a hallway as "extra staff or to assist with a particular duty such as 'showers.'" (*Id.* ¶ 11.) Doswell alleges Tanglewood was poorly run with many vacant rooms and informed Maxim of this, and that she feared for her license. (*Id.* ¶ 12.)

Doswell claims she was assigned to "assist Resident A with his dinner and to assist him with getting into bed and ensure that Resident A did not fall." (Am. Comp. ¶ 14(i)). Resident A had a history of falls and had a diagnosis that "included: altered mental status, confusion, hallucinations, exit seeking (elopement), dementia, fall: injury to head." (*Id.* ¶ 14(f-g).) After Resident A was asleep for 30-40 minutes, Doswell left him alone in his apartment to start some laundry for him and take her dinner break. (*Id.* ¶ 14(l).) Doswell was outside smoking in her car in the parking lot when she saw an ambulance arrive at Tanglewood because Resident A was injured and needed transport to the hospital for stitches. (*Id.* ¶ 15(b), (e).) Doswell claims that she was not

4

told that Resident A required "one-on-one monitoring," (*id.* ¶ 14(i)), yet after the incident, the LPN on duty asked Doswell where she had been since Resident A was a one-on-one case and she should not have left him alone. (*Id.* ¶ 15(c).)

The incident was reported to the Indiana Department of Health, resulting in the temporary loss of Doswell's license from October 7, 2014, to March 13, 2015, after the Department initially made a finding of neglect. (*Id.* ¶¶ 13, 17.) Following Doswell's appeal and a hearing where evidence was presented to an Administrative Law Judge ("ALJ"), Doswell's license was reinstated. (*Id.* ¶¶ 18, 22.) The ALJ found that Doswell was not negligent in her care of Resident A. (*Id.* ¶ 22.)

The first amended complaint states this action is "based upon Indiana law of libel and slander, breach of contract and fraud." (*Id.* ¶ 1.) Regarding the alleged defamatory statements, the first amended complaint provides that the "operative events of this cause revolve[] around the care of Resident A on January 28, 2014, . . . and the reporting of Doswell to the Indiana Department of Health . . . ." (*Id.* ¶ 13.) Doswell alleges "[t]he specific language of the Complaint was something akin to: 'on January 28, 2014, she left her post without telling anyone after being told 'don't let him fall,' and Patient A fell and hurt himself." (*Id.* ¶ 20.) The first amended complaint further alleges "[b]ecause Resident A should never have been accepted by Tanglewood Trace, an assisted

5

living facility only, and because defendants placed blame and maliciously started the license-revocation proceeding . . . knowing that Doswell's livelihood would be terminated constituted **<u>unprivileged</u>** libel and slander." (*Id.*)(emphasis in original).

Doswell also alleges that "Tangelwood Trace made, and Defendant Maxim, joint employers, allowed unprivileged false statements of fact about Doswell causing her harm, and . . . acted either negligently or with actual malice." (*Id.* ¶ 25.) The first amended complaint alleges that "Defendant Maxim breached the agency contract with Ms. Doswell assuring Plaintiff that Maxim would defend its nurses from complaints affecting their nurse's licenses" and "fraudulently presented the video described above, knowing that it would not do anything to defend Ms. Doswell's license." (*Id.* ¶¶ 27, 30.)

I. <u>Count I - Libel and Slander</u>

Count I alleges that Defendants Maxim and Tanglewood Trace maliciously started the license-revocation proceeding, and made false statements about Doswell, causing her harm. (Am. Compl., pp. 6-7.) Both Maxim and Tanglewood Trace argue that reporting patient injuries where there is possible neglect to the Indiana Department of Health cannot form the basis of a defamation claim because the reporting is required by law, and any statements made are immune under the absolute privilege for statements made in judicial and

6

quasi-judicial proceedings.

Defendants Maxim and Tanglewood Trace both set forth that they had a legal obligation to report Patient A's injury to the Indiana Department of Health, Division of Health Care Education and Quality. (DE #34 at 4; DE #36 at 8.) Doswell was a nurse aide while she was employed by Maxim, and 410 IAC 16.2-3.1-28(c) establishes that "[t]he facility must ensure that *all alleged violations* involving mistreatment, neglect, or abuse, including injuries of unknown source, and misappropriation of resident property, are reported immediately to the administrator of the facility and other officials in accordance with state law through established procedures, including to the state survey and certification agency." 410 IAC 16.2-3.1-28(c) (emphasis added). Doswell does not dispute this duty, or the legal obligation.

"Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements." *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008) (citing *Wilkins v. Hyde*, 41 N.E. 536, 536 (1895); *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998)). "The reason upon which the rule is founded is the necessity of preserving the due administration of justice, by providing actors in judicial proceedings with the freedom to participate without fear of future defamation claims." *Id*.

While Doswell claims that Indiana cases only refer to an absolute privilege in "dicta and other loose talk" (DE #28 at 2), Defendants cite *Hartman* in direct support of their argument that an absolute privilege has been extended to quasi-judicial proceedings. In *Hartman*, students were sued by their instructor for defamation and intentional interference with a contract after the students filed a complaint against the instructor pursuant to the university's anti-harassment policy. 883 N.E.2d at 776. The Court upheld summary judgment in favor of the students, finding the absolute privilege applies to communication of students' complaints pursuant to the university's anti-harassment policy because of the "quasi-judicial" nature of the universities' policies. *Id.* at 777-79. Moreover, the Indiana Supreme Court explicitly stated in *Hartman* that "Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of judicial proceedings, regardless of the truth or motive behind the statements." *Id.* at 777.

In their reply memorandum, Tanglewood Trace goes on to cite a number of cases applying the absolute privilege for statements made in judicial proceedings. *See, e.g., Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 247-49 (Ind. Ct. App. 2013) (finding statements made in counterclaim were protected by the absolute privilege for statements made during judicial proceedings); *Miller v. Reinert*, 839 N.E.2d 731, 735-36 (Ind. Ct. App. 2005) (holding statements

made in appellate brief were absolutely privileged); *Briggs v. Clinton Cnty. Bank & Trust Co.*, 452 N.E.2d 989, 997 (Ind. Ct. App. 1983) (finding allegations in a Petition to Discharge, which were relevant and pertinent, were entitled to absolute privilege); *Van Eaton v. Fink*, 697 N.E.2d 490, 494-95 (Ind. Ct. App. 1998); *Chrysler Motors Corp. v. Graham*, 631 N.E.2d 7 (Ind. Ct. App. 1994) (finding statements made in an affidavit filed in an attachment proceeding were absolutely privileged). *See also Sharkey v. Cochran*, No. 1:09-cv-0517-JMS-DKL, 2012 WL 967057, at *3 (S.D. Ind. Mar. 21, 2012) (statements made in an application for protective order are absolutely privileged and do no support a defamation claim). Additionally, the absolute privilege for statements made in judicial proceedings has been acknowledged by the United States District Court for the Northern District of Indiana as existing under Indiana law in *Medical Informatics Eng'g, Inc. v. Orthopaedics Northeast, P.C.*, 458 F.Supp.2d 716, 723 (N.D. Ind. 2006). The law is clear that Indiana courts recognize an absolute privilege for judicial proceedings and that *Hartman* specifically extended that privilege to quasi-judicial proceedings as well.

Here, it is clear this is a judicial or quasi-judicial proceeding. The proceeding was governed by the Administrative Orders and Procedures Act, IC 4-21.5. The reporting of the incident resulted in an investigation by the Indiana Department of Health pursuant to 42 C.F.R. § 483.156, findings, a right to

9

appeal, a hearing before an Administrative Law Judge where evidence was presented, and an issuance by the Administrative Law Judge of findings of fact and conclusions of law. (Am. Compl. ¶¶ 14, 17, 18, 22.) As noted before, Maxim and Tanglewood had a legal obligation imposed by 410 I.A.C. 16.2-3.1-28(c), to report Patient A's injury to the Indiana Department of Health. As such, any communication with the Indiana Department of Health was made in the course of a judicial or quasi-judicial proceeding, and is covered by an absolute privilege.

Doswell also argues that in cases like this, "where a license or livelihood is attacked . . . only a qualified privilege" exists, not an absolute privilege. (DE #28 at 3.) The only case Doswell cites in support of this proposition is *Blubaugh v. Am. Contract Bridge League*, No. IP 01-358-C/H/K, 2004 WL 392930 (Feb. 18, 2004), which was decided before *Hartman*. In *Blubaugh*, a professional bridge player sued a bridge league for claims of, *inter alia*, defamation stemming from the league's decision to suspend him. There were several causes of actions and defamatory statements at issue, but the first group of statements were made in connection with two disciplinary proceedings conducted to adjudicate the league's charges against the plaintiff. *Id.* at *10-11. The Court found that as a matter of law, the statements were "protected by a qualified privilege" for "[s]tatements made in the context of fraternal associations or societies" without analyzing whether they

10

could have been protected by an absolute privilege. *Id.* at *11. Thus, *Blubaugh* dealt with a fraternal association, plus was decided before *Hartman* (extending an absolute privilege to quasi-judicial proceedings). *Blubaugh* is inapplicable to the present facts, where case law is clear that an absolute privilege applies to statements made in judicial and quasi-judicial proceedings.

Doswell also contends that "our mere allegation of falsity in our complaint" precludes dismissal. (DE #28 at 3.) In support, Doswell cites *Sanders v. Stewart*, 298 N.E.2d 509 (Ind. Ct. App. 1973). However, that case dealt with whether a written statement, requested by and furnished to, the Indiana Employment Security Division ("IESD"), was privileged, and if so, which privilege applied. *Sanders* involved a nurse's aide employed by defendant, who was fired, and subsequently applied with the IESD for unemployment compensation. The IESD sent her a form to complete for benefits, and in it, the defendant stated the reasons she was discharged, and it was the statement of reasons that the plaintiff contended was libelous. *Id.* at 510. The defendant contended that the statute at issue extended an absolute privilege to the defendant. The statute provided, *inter alia*, that "[a]ny testimony or evidence submitted in due course before the board, review board, a referee, or any duly authorized representative or any of them shall be deemed a communication presumptively privileged with respect to any civil action except actions to enforce the

11

provisions of this act." *Id.* at 511. The Court ruled the phrase "presumptively privileged" recognized a qualified privilege, rather than an absolute privilege, on statements made to the IESD. *Id.* at 511-12. However, *Sanders* is specific to statements made to the IESD, within the unemployment context. As such, *Sanders* is simply inapplicable to this case, and the allegation that the statements are false cannot save Doswell's claims. The Indiana Supreme Court explicitly stated in *Hartman* that "Indiana law has long recognized an absolute privilege that protects all relevant statements made in the course of judicial proceedings, regardless of the truth or motive behind the statements." *Hartman*, 883 N.E.2d at 777. In sum, the statements at issue in this case are protected by an absolute privilege, and dismissal is warranted on this basis for Count I.[1]

## II. Count II - Breach of Contract

Maxim argues in regard to Count II that Doswell has failed to state a claim upon which relief can be granted. "The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 655

---

[1] Tanglewood Trace argues that dismissal is additionally appropriate on these claims because Doswell has failed to specifically plead the defamation claims. Because the defamation claims are disposed of due to absolute privilege, the Court need not reach this argument.

12

(Ind. Ct. App. 2004). Doswell asserts Maxim contracted to defend its nurses from complaints involving their licenses; however, Maxim argues Doswell failed to assert a breach of that contract. For example, Maxim points out that Doswell never alleged that Maxim was notified of the Administrative Hearing, or that Doswell ever asked Maxim to defend her license.

Tanglewood Trace joins this argument, plus urges that an orientation video cannot create a contract of employment. Indeed, there are cases finding that an employee handbook does not create a contract of employment. *See, e.g., Harris v. Brewer*, 49 N.E.3d 632, 640-42 (Ind. Ct. App. 2015) (finding employee handbook did not create a contract). Tanglewood Trace argues that Doswell has not alleged that a valid contract existed based upon an alleged promise made during an orientation video.

Doswell does not respond to any of these arguments. "Failure to respond to an argument raised in a motion to dismiss results in waiver." *Pelham v. Albright*, No. 3:11 CV 99, 2012 WL 1600455, at *5 (N.D. Ind. May 4, 2012) (citing *Bonte v. United States Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). "Additionally, if the defendant presents plausible reasons why a complaint should be dismissed, the Court has no responsibility to conduct research on behalf of a plaintiff in order to discover whether the plaintiff could prevail against the defendant's plea for dismissal." *Gluck v. WNIN Tri-State Public Media, Inc.*, No. 2-12-cv-32-JMS-DKL, 2012

WL 2953074, at *2 (S.D. Ind. July 18, 2012) (citing *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999)). Consequently, dismissal is appropriate for Count II.

III.     Count III - Fraud

Doswell attempts to assert a claim for fraud based upon an orientation video wherein Maxim allegedly promised to "defend her license," but then did not defend Doswell during the administrative hearing. The elements of a fraud claim in Indiana are a "material misrepresentation of past or existing facts, which representation is false, made with knowledge or reckless ignorance of its falsity, which causes reliance to the detriment of the person relying upon it." *First Nat'l Bank of New Castle v. Acra*, 462 N.E.2d 1345, 1348 (Ind. Ct. App. 1984) (citation omitted). Maxim argues that because Doswell failed to allege that Maxim was notified of an administrative hearing, or that it was asked by Plaintiff to defend her at the hearing and refused to do so, Plaintiff cannot demonstrate that any alleged statements are false. Therefore, Doswell has failed to sufficiently allege fraud. (DE #34 at 9.)

Tanglewood Trace reiterates this argument, plus additionally argues that Doswell failed to plead a cognizable claim for fraud because a promise to do something in the future cannot form a basis for fraud. (DE #36 at 12-13.) Indeed, "actionable fraud cannot be predicated upon a promise to do a thing in the future, although

there may be no intention of fulfilling the promise." *F. McConnell & Sons, Inc. v. Target Data Sys., Inc.*, 84 F.Supp.2d 980, 985 (N.D. Ind. 2000) (quoting *Wright-Moore v. Ricoh Corp.*, 908 F.2d 128, 141 (7th Cir. 1990)).

Doswell does not respond to any of these arguments. "Failure to respond to an argument raised in a motion to dismiss results in waiver." *Pelham*, 2012 WL 1600455, at *5 (N.D. Ind. May 4, 2012). Dismissal is therefore appropriate for Count III. *Gluck,* 2012 WL 2953074, at *2 (S.D. Ind. July 18, 2012).

CONCLUSION

For the reasons set forth above, "Defendant, Maxim Healthcare Services, Inc. D/B/A Maxim Staffing Solutions' Motion to Dismiss" (DE #33) and "Defendant CW LLC D/B/A Tangelwood [sic.] Trace's Motion to Dismiss Plaintiff's Amended Complaint" (DE #35) are **BOTH GRANTED**. The Clerk is **ORDERED** to **DISMISS** all claims in the First Amended Complaint (DE #29) **WITH PREJUDICE**. Additionally, the Clerk is **ORDERED** to **CLOSE** this case.


**DATED: July 12, 2016**        /s/ RUDY LOZANO, Judge
                                **United States District Court**